IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DARRYL WEBB, individually
and on behalf of all others similarly
situated                                                                                          PLAINTIFF


v.                                              Case No. 1:19-cv-1059


SOUTHERN ALUMINUM MANUFACTURING
ACQUISITION, INC.                                                                      DEFENDANT

## ORDER

Before the Court is the parties' Renewed Joint Motion to Dismiss with Prejudice and for Approval of Settlement Agreement. (ECF No. 22). The Court held a hearing on the motion on February 10, 2022. (ECF No. 31). The matter is ripe for consideration.

### I. BACKGROUND

On December 6, 2019, Plaintiff Darryl Webb filed this action individually and on behalf of all others similarly situated, alleging that Defendant willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, et seq. Specifically, Plaintiff alleges Defendant failed to include bonuses in its overtime calculations for employees who worked more than forty hours in a given workweek and received a bonus during that workweek. Plaintiff also alleges that Defendant rounded down its hourly employees' number of hours worked, causing the payroll records to inaccurately reflect the time worked by those employees.

On September 10, 2020, the parties moved the Court to certify this case as a collective action under the FLSA, approve the parties' proposed settlement agreement, and dismiss the case. (ECF No. 14). On April 5, 2021, the Court granted conditional certification of a collective action

for settlement purposes but denied as premature the request for settlement approval and dismissal. (ECF No. 21). The Court authorized the notice plan to be sent to the prospective collective members, which totaled 320 of Defendant's current and former employees. Notice was issued along with individual checks that each potential member could negotiate during a designated opt-in period and thereby opt into the collective. By the end of the opt-in period, 223 people cashed their checks and joined the collective.

On August 27, 2021, the parties filed the instant motion, indicating that they have resolved all claims in this case, as captured in a proposed Settlement Agreement filed with the Court. (ECF No. 22-2). They ask the Court to approve their settlement, appoint Plaintiff's counsel as Group Counsel for settlement purposes only, and dismiss this case with prejudice.

## II. DISCUSSION

The FLSA was enacted for the purpose of protecting workers from "substandard wages and oppressive working hours." *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 739 (1981). "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Loseke v. Depalma Hotel Corp.*, No. 4:13-cv-3191, 2014 WL 3700904, at *1 (D. Neb. July 24, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982)). "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies that it was designed to effectuate." *Barrentine*, 450 U.S. at 740.

There are two ways in which FLSA wage claims can be settled or compromised by employees. First, an employee may accept full payment of unpaid wages under the supervision of the Secretary of Labor. 29 U.S.C. § 216(c). Second, when employees bring a private action for back wages under the FLSA, the Court may enter a stipulated judgment after scrutinizing the

settlement for fairness. *Beauford v. ActionLink*, 781 F.3d 396, 405 (8th Cir. 2015); *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008). However, most FLSA cases are not compromised under either category but, like here, are instead submitted to the district court for approval and dismissal with prejudice, which would have the same effect as a stipulated judgment. *Melgar v. OK Foods*, No. 2:13-cv-2169-PKH, 2017 WL 10087890, at *1 (W.D. Ark. Jan. 26, 2017).

It remains an open question in the Eighth Circuit whether the FLSA requires judicial approval to settle bona fide disputes over wages owed. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019); *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018). When asked, this Court and others in the Eighth Circuit typically review a proposed FLSA settlement's terms for fairness to ensure the parties are not left in an "uncertain position." *See, e.g.*, *King v. Raineri Const., LLC*, No. 4:14-cv-1828 (CEJ), 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015). In doing so, the Court will only approve a FLSA settlement agreement if the case "involves a bona fide dispute and . . . the proposed settlement is fair and equitable to all parties." *Frye v. Accent Mktg. Servs., LLC*, No. 4:13-cv-59 (CDP), 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014). The Court will determine those two issues in that order.

A settlement addresses a bona fide dispute when it "reflects a reasonable compromise over issues actually in dispute." *King*, 2015 WL 631253, at *2 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946)). After all, if there was no dispute that a plaintiff is owed wages, allowing the FLSA claims to settle would allow the parties to improperly negotiate around mandatory FLSA entitlements. *Barrentine*, 450 U.S. at 739-40. The "threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Netzel v. W. Shore Grp., Inc.*, No. 16-cv-2552 (RHK/LIB), 2017 WL 1906955, at *4 (D. Minn. May 8, 2017).

In this case, Plaintiff alleged that Defendant failed to include bonuses in its overtime

3

calculation for employees who worked more than forty hours in a workweek and who received a bonus during that week.[1]  Defendant denied liability, stated affirmatively that it attempted to comply in good faith with the relevant provisions of the FLSA and the AMWA, and denied that liquidated damages are applicable in this case.  The Court is satisfied that this case involves bona fide disputes over FLSA provisions.

To now determine whether the proposed FLSA settlement is fair and reasonable, the Court considers the totality of the circumstances, including factors such as "the stage of the litigation and the amount of discovery exchanged, the experience of counsel, the probability of success on the merits, any 'overreaching' by the employer in the settlement negotiations, and whether the settlement was the product of an arm's length negotiation between the parties based on the merits of the case."[2]  *Trogdon v. Kleenco Maint. & Constr., Inc.*, No. 5:14-cv-5057-PKH, 2016 WL 7664285, at *2 (W.D. Ark. Nov. 18, 2016).  "This approach focuses on the fairness of the process used by the parties in reaching a settlement."  *Grahovic v. Ben's Richardson Pizza Inc.*, No. 4:15-cv-1659-NCC, 2016 WL 1170977, at *2 (E.D. Mo. Mar. 25, 2016).

The parties, each represented by experienced counsel, reached their settlement relatively quickly.  This case was filed on December 6, 2019.  After Defendant filed its answer on January 10, 2020, the first motion filed by either party came on June 4, 2020, where the parties jointly indicated they were discussing a possible settlement and sought an extension of the time to move

---

[1] At the hearing, the parties indicated that the settlement forfeits Plaintiff's claim that Defendant improperly calculated hourly employees' clock-in and clock-out times because the alleged rounding practice could have also resulted in overpayments to those workers.

[2] When applicable, other factors that may be considered include:  (1) the amount of overtime to which class members may be entitled; (2) how close to full compensation of class members' claims the proposed settlement provides; (3) whether the proposed settlement includes or excludes liquidated damages and/or attorney's fees and expenses; (4) the likely complexity, expense, and duration of the litigation if the settlement is not approved; and (5) what additional claims class members must release in order to receive compensation under the proposed settlement agreement.  *Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, No. 3:16-cv-00026, 2017 WL 821656, at *5 (S.D. Iowa Jan. 10, 2017).

for certification. The Court granted the extension, and on September 10, 2020, the parties indicated they had reached their settlement agreement and asked to begin the judicial FLSA settlement process and for dismissal of the case. No other motion practice occurred up to that point. At the hearing on the instant motion, counsel represented that they were able to settle the case quickly and without the ordinary motion practice seen in FLSA cases because they engaged in substantial informal discovery before the formal discovery period opened. Defense counsel produced all relevant payroll records in an organized and accessible format, allowing Plaintiff's counsel to promptly determine the makeup of a potential class and/or collective.

At the hearing, the Court indicated that the parties' quick resolution of this case, prior to any formal discovery having occurred, gave the Court concern that the proposed settlement was not the result of arm's length negotiation after the parties assessed their relative likelihood of success on the merits. Counsel for both parties discussed their experience with FLSA claims and detailed the probability of Plaintiff's success at trial. The information informally produced by Defendant allowed the parties to assess the strengths and weaknesses of their relative positions, which informed the parties' decision to settle. The settlement would give Plaintiff and the collective substantial relief now without the need, cost, and risk of extended litigation and a potential trial. From these representations, the Court is satisfied that the proposed merits settlement is the good-faith product of arm's length negotiation between the parties' experienced counsel, based on the merits of the case rather than some other improper purpose. *See Grahovic*, 2016 WL 1170977, at *3 (finding a settlement fair and reasonable when the parties had not engaged in formal discovery but informally exchanged all relevant payroll documents that allowed the parties to assess the strengths of their positions prior to settlement talks).

The parties' proposed settlement agreement provides for the creation of a common fund totaling $57,097.00, representing the amount of unpaid overtime premium allegedly withheld by

Defendant and an equal amount in liquidated damages. The agreement provides for 60% of the common fund to be earmarked as a maximum damages settlement for Plaintiff and the collective. Based on the individual damage calculations performed by Plaintiff's counsel, each potential collective member who negotiated their opt-in check would receive 100% of their unpaid overtime premium and 60% of their combined unpaid overtime premium and alleged liquidated damages, a figure that represents a negotiated compromise based on Plaintiff's chances of success on the claims in this case. If every potential member of the collective negotiated their checks during the opt-in period and joined the collective, the damages paid to Plaintiff and the collective would have totaled $34,258.20, the entire 60% of the fund that was allocated for damages. However, because only 223 of the 320 potential collective members cashed their checks and opted in, the damages actually paid equaled $30,934.32, with the difference reverting to Defendant. The agreement also provides for 40% of the total settlement fund, $22,838.80, to be awarded to Plaintiff's counsel as attorney's fees and costs, regardless of the participation in the collective. The Court now addresses those attorney's fees.

The Eighth Circuit has assumed, without deciding, that if FLSA settlements are subject to judicial review, district courts have "the authority to ensure (1) the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim, and (2) there was no conflict of interest between the attorney and his or her client."[3] *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 853-54 (8th Cir. 2021) (cleaned up). If the Court answers those questions affirmatively, then it lacks the authority under the FLSA to review the settled attorney's fees. *Barbee*, 927 F.3d at 1027. If, however, the attorney's fees were not negotiated separately and apart from the merits

---

[3] The parties have moved for the Court's approval of the FLSA settlement, so the Court uses the law to be applied if judicial review of FLSA settlements is required. *See Seow v. Miyabi Inc.*, No. 19-cv-2692 (JNE/DTS), 2021 WL 3616894, at *1 (D. Minn. July 15, 2021) (doing the same); *Bryson v. Patel*, No. 4:20-cv-0065-ERE, 2021 WL 2446352, at *1 (E.D. Ark. June 15, 2021) (same).

settlement, the Court may then review the fees for reasonableness. *See Vines*, 9 F.4th 849, 855-57 (reviewing a reduced award of attorney's fees after finding the district court correctly determined the fees were not negotiated separately from the FLSA merits settlement).

Counsel stated at the motion hearing that the parties separately negotiated the settled attorney's fees from the FLSA merits settlements and that Plaintiff's contingency arrangement with counsel did not reduce the damages awarded to Plaintiff and the collective under the settlement. However, the settled attorney's fees were nonetheless calculated as a "percentage of the fund," with the fees comprising 40% of the total common fund established under the settlement. When, like here, settled attorney's fees are calculated as a percentage of a total FLSA settlement common fund, district courts throughout the Eighth Circuit have found that *Barbee*'s limitation on fee review does not apply because, among other reasons, the fees are necessarily intertwined with the FLSA merits settlement. *Guy v. DMG Installations, Inc.*, No. 4:20-cv-0331-SBJ, 2021 WL 4973251, at *5-6 (S.D. Iowa Oct. 22, 2021); *Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-0574-SPM, 2021 WL 2634669, at *6 n.3 (E.D. Mo. June 25, 2021); *Sandoval-Osegura v. Harvey Pallets Mgmt. Grp., LLC*, No. 4:19-cv-0096-AGF, 2021 WL 2337614, at *2 n.3 (E.D. Mo. June 8, 2021); *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-cv-2635-JAR, 2021 WL 1784368, at *2 (E.D. Mo. May 5, 2021).

Thus, the Court has authority to review the proposed agreement's percentage-of-the-fund approach to calculating fees, which is appropriate if the fees are fair and reasonable. *Del Toro*, WL 1784368, at *3. The Court does so while remembering that "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of attorneys' fees." *Melgar*, 902 F.3d at 779. Rather, the review "requires a certain level of deference . . . to the parties' settlement agreement" and "is more deferential than resolving attorneys' fees in a disputed case." *Id.* at 779-80.

7

The Eighth Circuit has not offered a specific test for considering the reasonableness of attorney's fees calculated as a percentage of the fund, but district courts in the Eighth Circuit frequently use the following factors set out by the Fifth Circuit in *Johnson v. Georgia Highway Express*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d 714, 719-20 (5th Cir. 1974); *see also Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 (8th Cir. 2007) (finding no abuse of discretion where the district court considered the *Johnson* factors in determining the final fee award). Not all factors will apply in every case and not all need to weigh in favor of the ultimate fee award. *Browne v. P.A.M. Transp., Inc.*, No. 5:16-cv-5366-TLB, 2020 WL 4430991, at *2 (W.D. Ark. July 31, 2020). The *Johnson* factors overlap almost completely with the factors laid out by the Arkansas Supreme Court for assessing appropriate attorney fees under state law, such as the AMWA claim in this case. *Chrisco v. Sun Industries, Inc.*, *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 229, 800 S.W.2d 717, 718-19 (1990); *see also All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 520-21 (8th Cir. 2009) (endorsing the use of the *Chrisco* factors in matters of Arkansas state law).

Plaintiff's counsel took this case on a contingency basis, with no guarantee of success and significant risk of no recovery, and thus, no attorney's fees. Counsel for both sides have demonstrated their experience in class action litigation. The settlement was achieved after the parties informally exchanged significant amounts of documents, allowing for the determination of who the potential collective members are, the hours they worked, the wages they were paid, and

8

the strengths and weaknesses of the parties' respective claims and defenses. The settlement amount is substantial, with Plaintiff and the collective receiving 100% of their unpaid overtime premium and roughly 60% of their combined unpaid overtime premium and alleged liquidated damages. The 40% attorney's fee amount is slightly higher than the range ordinarily awarded in percentage-of-the-fund cases. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (noting the ordinary range of 25% to 36%). However, any skepticism the Court might have about approving that award is overcome by the benefit provided to Plaintiff and the collective, as well as the Eighth Circuit's admonition that courts should give a certain amount of deference when reviewing agreed attorney's fees in FLSA settlements. *See Johnson v. Thomson Reuters*, No. 18-cv-0070-PJS/HB, 2019 WL 1254565, at *6 (D. Minn. Mar. 19, 2019) (approving agreed fee request in FLSA settlement after expressing skepticism about the fee request's reasonableness); *Roark v. Nat'l Park Motors, Inc.*, No. 6:17-cv-6131-PKH, 2019 U.S. Dist. LEXIS 5530, at *5-6 (W.D. Ark. Jan. 11, 2019) (same). Accordingly, 40% of the settlement fund, or $22,838.80, is a fair and reasonable attorney's fee based on the specific circumstances of this case.

### III. CONCLUSION

For the above-stated reasons, the parties' joint motion (ECF No. 22) is hereby **GRANTED**. Christopher Burks and Brandon Haubert are appointed as Group Counsel for settlement purposes only. The parties' proposed settlement agreement is approved as fair and reasonable in all respects. This case is **DISMISSED WITH PREJUDICE**. The Court will retain jurisdiction to vacate this order and reopen this action upon cause shown that the settlement has not been completed and further litigation is necessary.

**IT IS SO ORDERED**, this 15th day of March, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge